**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **CARLOS MARIANO,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED PARCEL SERVICE, INC.,**<br><br>**Defendant.** | ) | **Civil Action No.**<br>**25-11961-BEM** |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**MURPHY, J.**

Plaintiff Carlos Mariano, a practicing Seventh-day Adventist, brings this case against his employer, Defendant United Parcel Service, Inc. ("UPS") for alleged discrimination based on his religion and for retaliation. Mariano, whose religion prohibits working on the Sabbath, claims that UPS failed to provide a reasonable accommodation and denied him job opportunities for requesting those accommodations. Here, the undisputed factual record shows that UPS did provide Mariano with a reasonable accommodation, and that UPS possessed legitimate, non-discriminatory reasons for denying Mariano other jobs within the company. Accordingly, for the reasons stated herein, the Court will grant UPS's motion for summary judgment on all counts.

## I. Factual & Procedural Background

Except as noted, the following facts are undisputed as detailed in the parties' consolidated statement of material facts. Dkt. 38-1 ("CSMF").

In October 2022, UPS hired Mariano as a seasonal, or casual, package car driver, which required a Tuesday through Saturday schedule. *Id.* ¶¶ 21, 47. On his first day of work, Mariano

learned his new job required Saturday shifts. *Id.* ¶ 49. He informed UPS that he was a practicing Seventh-day Adventist who observed the Sabbath. *Id.* ¶ 22. Consistent with his religious practices, Mariano could not work between sundown on Fridays until sundown on Saturdays. *Id.* For that reason, Mariano requested a schedule that would permit him to not work on the Sabbath. *Id.* ¶ 23. In response, UPS placed Mariano in a new non-seasonal role as a package car preloader at the UPS South Boston facility, which permitted him to work Monday through Friday in the early morning until mid-morning. *Id.* ¶¶ 23, 51.

In May 2023, UPS posted a new job opportunity: a temporary cover driver ("TCD") position with a Tuesday through Saturday schedule. *Id.* ¶ 25. Generally, when a TCD position becomes available, current UPS employees may place their names on a list for consideration.[1] *Id.* ¶ 9. UPS's latest collective bargaining agreement ("CBA") with the Teamsters (the "Union"), of which Mariano is a member, requires UPS to select the employee with the most seniority on the list. *Id.* ¶¶ 5–6, 9. When it came time to select an employee for the new TCD position, Mariano's name was not on the list. *Id.* ¶ 26. In July 2023, the Union asked UPS why it did not contact certain employees for the position, among them Mariano. *Id.* ¶¶ 28, 54. UPS replied that Mariano had not put his name on the list but asked if he should be added to the list for future consideration. *Id.* ¶ 29. The Union confirmed to UPS that Mariano should be added to the TCD list and also provided a photograph showing that Mariano's name was already on a "six-for-one list."[2] *Id.* ¶¶ 30, 57; *see also* Dkt. 36-12. UPS and Mariano dispute whether his presence on the six-for-one list should have resulted in his addition to the TCD list. CSMF ¶ 32.

[1] The parties dispute whether employees *must* put their names on the list or whether there are other avenues for becoming a candidate for the TCD position. CSMF ¶ 9.

[2] The six-for-one provision of the CBA requires that for every full-time driver hired from *outside* of UPS, six then-employed part-time employees must be elevated to full-time positions. CSMF ¶ 31.

On August 23, 2023, Mariano submitted a formal request to be excused from work on the Sabbath due to his religious beliefs. *Id.* ¶¶ 34, 69; *see also* Dkt. 36-13 at 2. UPS approved the request two days later, identifying Mariano's current Monday through Friday preloader position as the accommodation. CSMF ¶¶ 34, 70–71. Mariano reaffirmed his interest in a package car driver job, and UPS told him that he could seek other positions that would accommodate his schedule. *Id.* ¶¶ 35–36.

On December 6, 2023, and January 31, 2024, the Union filed grievances on Mariano's behalf alleging UPS had failed to select Mariano for a driver position and alter the schedule to Monday through Friday. *Id.* ¶¶ 43, 92–93. The January 31, 2024 grievance remains pending in arbitration. *Id.* ¶ 96.

On July 17, 2024, Mariano sought a new package car driver position with a Tuesday through Saturday schedule and, for a third time, requested an accommodation to not work on the Sabbath. *Id.* ¶¶ 37–38. UPS denied the request and did not hire Mariano for the position, but informed Mariano that he could apply for "22.3" positions, which create a Monday through Friday schedule by combining two part-time positions into one full-time position. *Id.* ¶¶ 39–40, 75, 77. Mariano never applied for a 22.3 position. *Id.* ¶¶ 41, 80.

Mariano filed his complaint in state court on June 17, 2025, Dkt. 1-1 at 6, and UPS removed to this Court on July 10, 2025, Dkt. 1. Mariano brings five claims: failure to accommodate in violation of Mass. Gen. Laws ch. 151B ("Chapter 151B") (Count I), Dkt. 1-1 at ¶¶ 19–21; retaliation in violation of Chapter 151B (Count II), *id.* ¶¶ 22–24; interference with the right to be free of discrimination in violation of Chapter 151B (Count III), *id.* ¶¶ 25–27; religious discrimination in violation of Title VII (Count IV), *id.* ¶¶ 28–30; and retaliation in violation of Title VII (Count V), *id.* ¶¶ 31–33. Following discovery, UPS filed a motion for summary judgment

on all claims on September 28, 2026. Dkts. 31, 36. The Court held a hearing on November 19, 2026, and took the motion under advisement.

## II. Legal Standard

Summary judgment will only be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Grogan v. All My Sons Bus. Dev. LLC*, 552 F. Supp. 3d 142, 145 (D. Mass. 2021) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "To succeed [on a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Grogan*, 552 F. Supp. 3d at 145 (quoting *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990)).

The Court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). However, "[t]he nonmoving party cannot fend off summary judgment unless it makes a competent demonstration that every essential element of its claim or defense is at least trialworthy." *Price v. Gen. Motors Corp.*, 931 F.2d 162, 164 (1st Cir. 1991) (emphasis omitted). "Where the non-moving party bears the ultimate burden of proof, the non-moving party 'must present definite, competent evidence to rebut the motion.'" *Satanic Temple, Inc. v. City of Bos.*, 684 F. Supp. 3d 21, 30 (D. Mass. 2023) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)), *aff'd*, 111 F.4th 156 (1st Cir. 2024).

## III. Discussion

### A. Count I & IV: Failure to Accommodate

Mariano alleges that UPS failed to accommodate his religious practices in violation of Title VII and Chapter 151B.[3] Dkt. 1-1 at ¶¶ 19–21, 28–30. UPS argues first that it did provide Mariano with a reasonable accommodation in the form of a Monday through Friday preloader position and encouraged him to apply for other opportunities such as a 22.3 position. Dkt. 36 at 9–11. Second, even if UPS failed to offer an accommodation, UPS asserts that permitting Mariano to work as a package car driver on a Monday through Friday schedule would have constituted an undue burden by forcing UPS to disregard the seniority bidding requirements codified in the CBA. *Id.* at 11–14.

In reasonable accommodation cases, the First Circuit applies a "two-part framework in analyzing religious discrimination."[4] *Lowe v. Mills*, 68 F.4th 706, 719 (1st Cir. 2023) (quoting *Sánches-Rodríguez v. AT & T Mobility P.R., Inc.*, 673 F.3d 1, 12 (1st Cir. 2012)).

> First, a plaintiff must make his prima facie case that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action. The burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship.

[3] There are multiple theories under which a plaintiff may claim religious discrimination. One such theory is failure to accommodate, while another is disparate treatment. *See, e.g.*, *Cloutier v. Costco Wholesale*, 311 F. Supp. 2d 190, 195 n.9 (D. Mass. 2004), *aff'd*, 390 F.3d 126 (1st Cir. 2004). In both the complaint and his opposition, Mariano is imprecise as to which theory he proceeds under for his singular Title VII claim. *See* Dkt. 1-1 at ¶¶ 28–30 (identifying just one "religious discrimination" claim under Title VII). Nevertheless, the parties treat the allegations as including a failure to accommodate claim under both state and federal law. *See* Dkt. 36 at 8; *see also* Dkt. 37 at 9. The Court will do the same.

[4] "Religious discrimination claims under Title VII and Chapter 151B are generally analyzed under the same framework. Because [plaintiff] points to no difference between the statutes that affects the analysis in this case, the Court analyzes both claims under the Title VII framework." *Cyr v. Bos. Med. Ctr.*, 2025 WL 269239, at *4 n.3 (D. Mass. Jan. 22, 2025) (citation omitted); *see also Rodrique v. Hearst Commc'ns., Inc.*, 126 F.4th 85, 90 n.1 (1st Cir. 2025) ("treat[ing] the claims as rising and falling together" where "neither party ha[d] identified relevant differences between religious discrimination claims under Title VII and Chapter 151B, nor provided any analysis specific to Chapter 151B"); *see also Cloutier*, 311 F. Supp. 2d at 202 ("[T]he two statutes appear to treat the question of reasonable accommodation identically.").

*Melino v. Bos. Med. Ctr.*, 2024 WL 2724145, at *1 (D. Mass. May 28, 2024) (internal quotation marks omitted). UPS moves for summary judgment only on the second prong—whether UPS offered a reasonable accommodation. Dkt. 36 at 9.

The undisputed factual record shows that UPS provided Mariano with multiple reasonable accommodations. First, after he was hired, it is undisputed that UPS shifted Mariano to the preloader position, allowing him to work Monday through Friday without impeding his observance of the Sabbath. CSMF ¶¶ 23, 51. Courts have found that transferring an employee to another role which "eliminate[s] [plaintiff's] religious conflict" can constitute a reasonable accommodation so long as it is "sufficiently comparable to the original position." *Ayele v. Allright Bos. Parking, Inc.*, 201 F.3d 426, 1999 WL 1319012, at *1 (1st Cir. 1999). As in *Ayele*, Mariano raises "no material factual issue as to a purported pay differential or other purported disadvantages" between Mariano's preferred role as a seasonal package car driver and the preloader position. *Id*. at *1 n.1. Second, UPS also encouraged Mariano to bid for 22.3 positions, which would have cobbled together two part-time roles into a full-time Monday through Friday position. CSMF ¶ 77. "Courts have held that encouraging a plaintiff to transfer to another position within the company and offering her assistance toward that effort constitute a reasonable accommodation." *Robinson v. Children's Hosp. Bos.*, 2016 WL 1337255, at *7 (D. Mass. Apr. 5, 2016). Mariano did not apply for these roles. CSMF ¶¶ 41, 80.

Mariano argues that "UPS never explored the obvious alternatives" like shift swaps or truncating his schedule to work four days a week.[5] Dkt. 37 at 11. But so long as UPS provided *a*

[5] Mariano asserts that a Tuesday through Friday schedule would not cause disturb UPS's operations, because other willing package car drivers could simply cover his Saturday shift. Dkt. 37 at 11. In response, UPS argues, and Mariano does not dispute, that the CBA mandates that all employees work five days per week, which would have prevented Mariano from working as a package car driver for only four days. Dkt. 38 at 4–5; *see also* CSMF ¶ 16.

reasonable accommodation, it has satisfied its burden under the law. *See Cloutier v. Costco Wholesale*, 311 F. Supp. 2d 190, 198 (D. Mass. 2004) ("Once an employer offers a reasonable accommodation, its obligations under Title VII are satisfied . . . . [T]he accommodation offered by the employer does not have to be the best accommodation possible, and the employer does not have to demonstrate that alternative accommodations would be worse."); *see also LaFreniere v. Spectrum Health Sys., Inc.*, 2025 WL 2793761, at *5 (D. Mass. Sept. 30, 2025) ("Title VII does not require an employer to choose any particular reasonable accommodation as the 'statute directs that *any* reasonable accommodation by the employer is sufficient to meet its accommodation obligation.'" (emphasis in original) (quoting *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986))). Accordingly, the Court finds that UPS met its obligations under the statute by providing Mariano with a reasonable accommodation.

Yet even if UPS failed to provide an accommodation, the Court would nevertheless find undue hardship in granting Mariano his *preferred* accommodation: a package car driver position from Monday through Friday. UPS argues that allowing Mariano, an employee of only a few months, to secure one of the highly sought after Monday through Friday package car driver positions would violate the CBA. Dkt. 36 at 11; *see also* CSMF ¶ 18 (recognizing that Monday through Friday positions were highly coveted). The parties do not dispute that the CBA provides for seniority-based bidding for certain package car driver positions, including the TCD position. CSMF ¶ 19. On this point, the Supreme Court precedent is abundantly clear: "[S]eniority systems are afforded special treatment under Title VII itself." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 81 (1977). "[A]bsent a discriminatory purpose, the operation of a seniority system cannot be an unlawful employment practice even if the system has some discriminatory consequences." *Id.* at 82. The Supreme Court has recently clarified its prior precedent by noting that if a requested

accommodation "transgress[es] on seniority rights[,] [t]he *Hardison* Court was very clear that those rights were off-limits." *Groff v. DeJoy*, 600 U.S. 447, 465 (2023).[6] The same holds true here, where Mariano's preferred accommodation would conflict with the CBA's seniority system. UPS's reasonable belief that giving Mariano the position would have circumvented the contractually binding seniority system was based, not only on the CBA itself, but also on discussions with the Union. CSMF ¶ 44 ("Undisputed that, at a grievance hearing, Joan Shea asked Union Business Agent Peter Alvarado whether the Union was asking UPS to violate another employee's seniority, and the Union did not agree to do so."); *see also* Dkt. 36 at 13 ("Without the consent of the Union, UPS was contractually bound by the seniority provisions of the CBA."). Here, the Court determines that permitting Mariano to leapfrog more-tenured employees would constitute a breach of its obligations to those senior employees and would have imposed a "substantial burden" on the business. Accordingly, UPS's motion for summary judgment as to Mariano's failure to accommodate claims is granted.

**B. <u>Counts III & IV: Discrimination</u>**

Mariano also alleges that UPS discriminated against him due to his religious practices in violation of Title VII and Chapter 151B: religious discrimination under Title VII, Dkt. 1-1 at ¶¶ 28–30, and interference with the right to be free from discrimination under Chapter 151B, *id.*

---

[6] As UPS notes, though *Groff* provided clarification on certain aspects of *Hardison*, including the standard for an undue hardship, it "[did] not disturb *Hardison*'s holding that it would constitute an undue hardship for an employer to take steps to accommodate an employee that would violate its obligations under the seniority provisions of a collective bargaining agreement." *De Souza v. N.Y.*, 824 F. Supp. 3d 336, 357 (S.D.N.Y. 2026) (finding undue hardship where not assigning Saturday shifts to a Seventh-day Adventist would have conflicted with a collective bargaining agreement that required assigning shifts by seniority); *see also Hall v. Sheppard Pratt Health Sys., Inc.*, 155 F.4th 747, 753 (4th Cir. 2025) ("*Groff* confirmed that reworking schedules in contradiction to a bona fide seniority system was an undue hardship.").

¶¶ 25–27.[7] UPS argues that its stated justifications for failing to hire Mariano for the package car driver positions were legitimate and non-discriminatory. Dkt. 36 at 14–18. In addition, it argues the undisputed factual record raises no inference of pretext. *Id.*; *see also* Dkt. 38 at 6–8.

In the context of religious discrimination, courts analyzing disparate treatment claims apply the *McDonnell Douglas* burden-shifting framework.[8] Under *McDonnell Douglas*, Mariano bears the initial burden of establishing a prima facie showing of discrimination on the basis of religion, including that he was subjected to an adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If so, the burden shifts to UPS to proffer a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 803–04. Upon that showing, the burden shifts back to Mariano to prove that UPS's non-discriminatory justification was "mere pretext for discrimination." *Amimi v. Whole Foods Mkts.*, 651 F. Supp. 3d 376, 383 (D. Mass. 2023). UPS largely ignores whether Mariano has stated a prima facie case, Dkt. 36 at 14–15, and Mariano takes UPS's alleged non-discriminatory reasons for not selecting him as a package car driver as given, Dkt. 37 at 15–16.

Instead the parties focus their attention on pretext. Mariano first points to UPS's allegedly inconsistent enforcement of its TCD list protocols. Dkt. 37 at 16. UPS asserted that Mariano had not signed the TCD list in May 2023, which prevented it from selecting him for the TCD position. CSMF ¶¶ 25–26. However, Mariano argues that another employee was added to the list after sign-ups had closed, per a Union request. Dkt. 37 at 16; CSMF ¶¶ 65, 66, 68. But there is no daylight

[7] Similar to his failure to accommodate claims, Mariano does not appear to allege an independent disparate treatment discrimination claim under Chapter 151B. Dkt. 1-1 at ¶¶ 19–24. Nevertheless, because the parties each present arguments regarding disparate treatment under state and federal law, the Court will construe Mariano's claims accordingly.

[8] State law and federal law both apply the *McDonnell Douglas* burden-shifting framework to discrimination claims. *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 680–81 (2016) (applying *McDonnell Douglas* to Chapter 151B claim).

between Mariano's experience and that of the other employee. Mariano was *also* added to the TCD list after the Union informed UPS that he should have been on the list in the first place. CSMF ¶¶ 30, 57. What is more, Mariano presents no evidence from which a reasonable jury could infer that he was originally not placed on the TCD list *because* of his religious beliefs.[9]

Mariano also argues that UPS changed its explanation for why he was denied a package car driver job. Dkt. 37 at 15–16. According to Mariano, UPS previously represented that he was not selected because his name was not on the TCD list. *Id.* Now, he argues, UPS states the denials were due to his lack of seniority. But the undisputed factual record fails to establish any inconsistencies in UPS's explanation for why Mariano was not granted a package car driver job. UPS did state that Mariano's name was not on the TCD list, but UPS also repeatedly affirmed that Mariano lacked seniority for a Monday through Friday position. Dkt. 37-4 at 124 ("Complainant does not have the requisite seniority to be placed into one of those positions."); Dkt. 36-14 at 2 ("His seniority does not allow him to bid a Monday – Friday driving position. His seniority wait time for a Monday – Friday driving position is approximately 6-10 years."). These explanations are not mutually exclusive, especially when Plaintiff sought a package car driver position multiple times.

In another attempt at showing pretext, Mariano points to other UPS employees who were granted religious accommodations to work Monday through Friday, including one fellow Seventh-day Adventist. Dkt. 37 at 1–2. "Where, as here, a plaintiff seeks to use comparators as

---

[9] State law does "diverge[] from the classic *McDonnell Douglas* framework" in one key aspect. *Diaz v. City of Somerville*, 59 F.4th 24, 29 (1st Cir. 2023). "Massachusetts is a pretext only jurisdiction, where a plaintiff need only present evidence from which a reasonable jury could infer that the [employer's] facially proper reasons given for its action against [him] were not the real reasons in order to survive summary judgment." *Id.* (alterations in original) (internal quotation marks omitted). Federal law, by contrast, also requires evidence of animus. *Id.* Because the Court determines there is no evidence from which a reasonable jury could infer pretext, the Court need not address the extra element under federal law.

evidence of discrimination, he must show that the comparators are 'similarly situated to him in all relevant respects.'" *Amimi*, 651 F. Supp. 3d at 388 (quoting *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 20 (1st Cir. 1999)). Here, Mariano's comparators are not similarly situated. CSMF ¶ 45. The comparator accommodations were granted in 2017, under a preceding CBA which set the standard workweek as Monday through Friday. *Id.* ¶ 46. Under the new CBA, the standard workweek for Mariano's requested positions became Tuesday through Saturday, with seniority determining which employees could bid on Monday through Friday schedules. *Id.* ¶ 15. Therefore, unlike for Mariano, accommodating the comparators did not require UPS to alter the standard workweek or circumvent the seniority requirements.[10]

In short, Mariano fails to raise a triable issue of pretext through varying policies, alleged inconsistent explanations from UPS, or comparators. UPS's motion for summary judgment is granted with respect to Mariano's religious discrimination claims.[11]

### C. <u>Counts II & V: Retaliation</u>

Mariano also asserts claims for retaliation under Title VII and Chapter 151B. Dkt. 1-1 at ¶¶ 22–24, 31–33. He argues that UPS denied him the opportunity to be a package car driver because he requested religious accommodations. Dkt. 37 at 16–17. UPS advances two arguments in support of summary judgment. First, Mariano disclaimed his retaliation claims in his deposition, and second, no causal connection exists between his requests for accommodations and UPS's denial of his request for a package car driver position. Dkt. 36 at 18–20.

---

[10] Additionally, Mariano's citation to a fellow Seventh-day Adventist receiving a reasonable accommodation undercuts any inference that UPS discriminated against Mariano for practicing the very same religion.

[11] The parties also agree that Mariano's claim of interference with the right to be free from discrimination under Chapter 151B, rises and falls with his more general discrimination claims. Dkt. 37 at 18; *see also* Dkt. 36 at 20. Because the Court grants summary judgment for UPS on those claims, Mariano's interference claim necessarily fails as well.

As to UPS's first argument, it is undisputed that during his deposition, Mariano said "No" when asked if he was bringing claims for retaliation. Dkt. 36-4 at 11 ("Q[:] So part of your claims in this case are retaliation; is that accurate? A[:] No."). This testimony, UPS argues, is sufficient to end the Court's analysis. Dkt. 36 at 18–19. But even if the Court were to ignore Mariano's deposition testimony, he would still fail to raise a material dispute of fact precluding summary judgment on his retaliation claim.

To establish a prima facie case for retaliation, Mariano must show that "(1) [he] engaged in protected activity; (2) [he] suffered some materially adverse action; and (3) the adverse action was causally linked to [his] protected activity." *Stratton v. Bentley Univ.*, 113 F.4th 25, 41–42 (1st Cir. 2024) (quoting *Dixon v. Int'l Bhd. of Police Officers*, 504 F.3d 73, 81 (1st Cir. 2007)). If Mariano establishes a prima facie case, the Court again employs the *McDonnell Douglas* framework. *See Cherkaoui v. City of Quincy*, 213 F. Supp. 3d 264, 279 (D. Mass. 2016).

Even assuming Mariano could establish a prima facie case, which UPS disputes, Dkt. 36 at 19, his claims would fail under the *McDonnell Douglas* framework. UPS advances the very same legitimate non-discriminatory justifications for its decisions as it does under Mariano's discrimination claims. *Id.* at 20. The Court has already determined that Mariano failed to raise a triable issue of pretext with respect to those non-discriminatory reasons. *See* Section III.B. Therefore, UPS's motion is also granted on Mariano's two retaliation claims.

## IV. Conclusion

For the foregoing reasons, UPS's motion for summary judgment is GRANTED.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

Dated: November 25, 2026